IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:09-HC-2159-D

| | |
|---|---|
| MICHAEL L. GREENE, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | )     **ORDER** |
| | ) |
| RENOICE STANCIL, Admin., | ) |
| Bertie Correctional Inst., | ) |
| | ) |
| Respondent. | ) |

Michael L. Greene ("Greene" or "petitioner"), a state inmate proceeding pro se, petitions the court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 [D.E. 1]. On July 28, 2010, Renoice Stancil ("respondent") filed a motion for summary judgment [D.E. 12]. On July 29, 2010, the court notified Greene of his right to respond [D.E. 14]. See Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam). On August 9, 2010, Greene responded in opposition to the motion for summary judgment. As explained below, respondent's motion for summary judgment is granted.

I.

The North Carolina Court of Appeals summarized the facts of this case as follows:

> The evidence of the State tends to show that on 3 April 2006 Matthew D'Antonio saw defendant place a nine millimeter handgun in the glove box and two sawed off shotguns in the trunk of D'Antonio's automobile. As he drove the vehicle with defendant riding as a passenger on the evening of 3 April 2006, defendant directed D'Antonio to make a turn onto Ford Street in Greenville. As the vehicle traveled down the street, defendant retrieved the handgun from the glove box and fired it at two men walking out of a residence. D'Antonio "punched the gas and took off."
>
> Police officers who were present in the area heard gunshots. They saw a vehicle leaving the area at a high rate of speed. The officers pursued and stopped the vehicle. The officers saw two men exit the vehicle and run. The officers apprehended defendant and D'Antonio at a nearby house. During a search of the abandoned

vehicle, the officers found two sawed off shotguns in the trunk of the vehicle. They also found a nine millimeter handgun on the roof of a shed at the house where they apprehended the two men. Forensic analysis subsequently revealed that the gun fired the expended cartridge cases found at the scene of the shooting.

State v. Greene, 191 N.C. App. 400, 663 S.E.2d 14, 2008 WL 2736563, at *1 (2008) (unpublished table decision).

On June 29, 2007, a jury in Pitt County Superior Court acquitted Green of two counts of attempted first degree murder, but convicted him of three counts of possession of a firearm by a felon, two counts of possession of a weapon of mass destruction, two counts of assault with a deadly weapon inflicting serious injury, and discharging a weapon into occupied property. Pet. ¶¶ 1–6; see also Mem. Supp. Mot. Summ. J. 1 & Ex. 2 at 3. The court sentenced Greene to 222 to 296 months' imprisonment. Pet. ¶ 3; see also Mem. Supp. Mot. Summ. J. 1. Greene appealed his convictions, and on July 15, 2008, the North Carolina Court of Appeals found no error. Pet. ¶ 9; Greene, 2008 WL 2736563, at *2. Greene did not file a petition for discretionary review in the North Carolina Supreme Court. Pet. ¶ 9.

On March 19, 2009, Greene sent a letter to Pitt County Superior Court, which that court construed as a motion for appropriate relief ("MAR"). Mem. Supp. Mot. Dismiss, Ex. 5. On April 6, 2009, the court denied Greene's MAR. Id. On July 20, 2009, Greene signed a second MAR, which was filed with the court on August 3, 2009, and summarily denied on August 5, 2009. Pet. ¶ 11; Mem. Supp. Mot. Summ. J., Exs. 6 & 7. On September 10, 2009, Greene signed and mailed a pro se certiorari petition to the North Carolina Court of Appeals concerning his MAR. Pet. ¶ 11, Mem. Supp. Mot. Summ. J., Ex. 8. On October 2, 2009, the North Carolina Court of Appeals denied the certiorari petition. Pet. ¶ 11; Mem. Supp. Mot. Summ. J., Ex. 10.

On December 10, 2009, Greene signed this habeas petition. See Pet. 21. Greene alleges he received ineffective assistance of trial counsel because his trial counsel: (1) failed to interview or subpoena for trial several key witnesses whose testimony would have indicated that Greene did not commit the alleged crimes;[1] (2) failed to conduct any pre-trial interviews with any of the prosecution witnesses; (3) "hired no investigator and didn't do any independent investigation[;]" (4) "failed to determine or seek the identity of the assailant who fled the crash scene[;]" and (5) "failed to consult with an independent ballistics expert[] to challenge the prosecution's ballistics evidence." See Pet. 10–11. Greene notes that the jury acquitted him of attempted murder, and contends that "had defense counsel not performed deficiently, the verdict would likely have been more favorable to petitioner than it was." Id. at 12.

II.

Summary judgment is appropriate when, after reviewing the record taken as a whole, no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party

---

[1] Specifically, Greene asserts that these witnesses would have contradicted several key aspects of D'Antonio's testimony regarding whether Greene: (1) had been fighting with the victims before the shooting; (2) was in the car with D'Antonio at the time of the shooting; (3) had fled with D'Antonio to the residence from which they were arrested; (4) was with D'Antonio when D'Antonio purchased the shotguns and pistol; and (5) was living with D'Antonio at the time of the shooting. Pet. 10–11. D'Antonio was the key witness against Greene, and was charged with and convicted of two counts of possession of a firearm by a felon and two counts of possession of a weapon of mass destruction. See N.C. Dep't of Corr., Offender Public Information, http://webapps6.doc.state.nc.us/opi/viewoffender.do?method=view&offenderID=0908782 (last visited Mar. 9, 2011); see also Mem. Opp'n Mot. Summ. J. 2–3 ("The state's key witness Matthew D'Antonio . . . [was] charged for all of the same counts . . . [but] as trial approached . . . began to confess all . . . actions and participation . . . ."). However, unlike Greene, D'Antonio received probation and a suspended term of incarceration as a result of his convictions. See N.C. Dep't of Corr., Offender Public Information, http://webapps6.doc.state.nc.us/opi/viewoffender.do?method=view&offenderID=0908782 (last visited Mar. 9, 2011).

3

seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis removed) (quotation omitted). A trial court reviewing a motion for summary judgment should determine whether a genuine issue of material fact exists for trial. Anderson, 477 U.S. at 249. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007).

A federal court cannot grant habeas relief in cases where a state court considered a claim on its merits unless (1) the state-court decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, or (2) the state-court decision was based on an unreasonable determination of the facts in light of the evidence presented in state court. 28 U.S.C. § 2254(d). A state-court decision is "contrary to" Supreme Court precedent if it either "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite" to the Supreme Court's. Williams v. Taylor, 529 U.S. 362, 405 (2000). A state-court decision involves an "unreasonable application" of Supreme Court precedent "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407; Renico v. Lett, 130 S. Ct. 1855, 1862 (2010).

> [Section 2254(d)] does not require that a state court cite to federal law in order for a federal court to determine whether the state court decision is an objectively reasonable one, nor does it require a federal habeas court to offer an independent

4

Case 5:09-hc-02159-D   Document 16   Filed 03/09/11   Page 4 of 11

opinion as to whether it believes, based upon its own reading of the controlling Supreme Court precedents, that the [petitioner's] constitutional rights were violated during the state court proceedings.

Bell v. Jarvis, 236 F.3d 149, 160 (4th Cir. 2000) (en banc). Moreover, a state court's factual determination is presumed correct, unless rebutted by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1); Sharpe v. Bell, 593 F.3d 372, 378 (4th Cir. 2010).

A.

Respondent first contends that Greene's petition is untimely. Mem. Supp. Mot. Summ. J. 3–14. Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a person in custody pursuant to the judgment of a state court must file any petition for a writ of habeas corpus within one year. See 28 U.S.C. § 2244(d)(1). The limitation period generally runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." Id. § 2244(d)(1)(A).

The limitation period under section 2244(d)(1) is tolled during the time "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2); Carey v. Saffold, 536 U.S. 214, 216–17 (2002). However, the period between the time a petitioner's conviction becomes final and the time that a petitioner files a state application for post-conviction relief counts against the one-year period of limitation. See, e.g., Hernandez v. Caldwell, 225 F.3d 435, 438 (4th Cir. 2000); Harris v. Hutchinson, 209 F.3d 325, 327 (4th Cir. 2000). An application for post-conviction or other collateral review is "pending" from initial filing in the state courts until final disposition in the state courts. Saffold, 536 U.S. at 219–20. The statutory period then resumes after the state court of appeals denies a petitioner's certiorari petition, see Hernandez, 225 F.3d at 438–39, or after the petitioner "unreasonably delays in filing [a certiorari] petition." N.C. R. App. P. 21(e); McConnell v. Beck,

5

427 F. Supp. 2d 578, 582 (M.D.N.C. 2006); see Evans v. Chavis, 546 U.S. 189, 201 (2006) (interpreting similar provision of California law).

Initially, the court must determine when Greene's conviction became final. See 28 U.S.C. § 2244(d)(1)(A). Greene's conviction became final no later than August 19, 2008, 35 days after the North Carolina Court of Appeals affirmed his conviction. See N.C. R. App. P. 14(a) and 15(b) (notice of appeal or petition for discretionary review may be filed within 15 days after issuance of mandate by Court of Appeals), N.C. R. App. P. 32(b) (unless court orders otherwise mandate issues 20 days after written opinion filed); Saguilar v. Harkleroad, 348 F. Supp. 2d 595, 599–600 (M.D.N.C. 2004), appeal dismissed, 145 F. App'x 444 (4th Cir. 2005) (per curiam) (unpublished). Thus, Greene's one-year period of limitations began to run on August 19, 2008, and ran for 212 days until Greene filed his first MAR on March 19, 2009. See, e.g., Minter v. Beck, 230 F.3d 663, 665 (4th Cir. 2000).[2]

Respondent contends that Greene's one-year period of limitations resumed on April 8, 2009, the date the Pitt County Superior Court denied his first MAR, and ran for 117 days until August 3, 2009, when the state court received his second MAR. To support this calculation, respondent argues that: (1) because Greene did not seek appellate review of the denial of his first MAR, he does not receive the benefit of tolling during the reasonable appeal period, Mem. Supp. Mot. Summ. J. 5; and (2) that the prison mailbox rule does not apply to state-court filings. Mem. Supp. Mot. Summ. J. 7 n.2. Respondent concedes Greene's one-year period of limitations then tolled until the North Carolina Court of Appeals denied certiorari on October 2, 2009. Saffold, 536 U.S. at 219–20.

---

[2] Greene contends that the state court should not have treated his March 19, 2009 letter as a MAR. Mem. Opp'n Mot. Summ. J. 2. However, because a MAR tolls Greene's federal statute of limitations under 28 U.S.C. § 2244, the court will apply the tolling to Greene's letter as if it were a MAR.

6

Respondent asserts Greene then had 36 days from October 2, 2009 to file this petition. Greene did not sign his petition until December 10, 2009. Therefore, respondent claims Greene's petition was untimely by 33 days.

Respondent's proposed calculation would require this court to determine: (1) what the North Carolina courts would consider a reasonable appeal period under N.C. R. App. P. 21(e), see Chavis, 546 U.S. at 201; McConnell, 427 F. Supp. 2d at 582; (2) whether Greene's failure to file such an appeal waives tolling during that reasonable appeal period; and, (3) whether state procedural rules should be used in determining the date of state filings. Compare Stoot v. Cain, 570 F.3d 669, 671–72 (5th Cir. 2009) (per curiam); Taylor v. Williams, 528 F.3d 847, 850 (11th Cir. 2008); Howland v. Quarterman, 507 F.3d 840, 845 (5th Cir. 2007) (per curiam); Garcia v. Shanks, 351 F.3d 468, 471–72 (10th Cir. 2003); Vroman v. Brigano, 346 F.3d 598, 604 (6th Cir. 2003); Koerner v. Grigas, 328 F.3d 1039, 1043 n.1 (9th Cir. 2003) with Fernandez v. Artuz, 402 F.3d 111, 115–16 (2d Cir. 2005); Anthony v. Cambra, 236 F.3d 568, 575 (9th Cir. 2000). Because Greene's claims lack merit, the court declines to address these questions, and assumes, without deciding, that Greene's petition was timely filed.

B.

The Sixth Amendment right to counsel includes the right to the effective assistance of counsel at both the trial and appellate levels. See, e.g., Bobby v. Van Hook, 130 S. Ct. 13, 16 (2009) (per curiam); Strickland v. Washington, 466 U.S. 668, 686 (1984). To prevail on a claim of ineffective assistance of counsel at the trial level, a habeas petitioner must establish two things. First, a petitioner must show that the counsel's performance was deficient in that it was objectively unreasonable under professional standards prevailing at the time. See, e.g., Van Hook, 130 S. Ct. at 16; Strickland, 466 U.S. at 687–91. In reviewing this element, a reviewing court must be "highly

7

deferential" of counsel's performance and must make every effort to "eliminate the distorting effects of hindsight." Strickland, 466 U.S. at 689. Therefore, the court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id.; Gray v. Branker, 529 F.3d 220, 228–29 (4th Cir. 2008). Second, a petitioner must show there is a "reasonable probability" that, but for the deficiency, the outcome of the proceeding would have been different. Strickland, 466 U.S. at 694. A petitioner bears the burden of proving both deficient performance and prejudice. Id. at 687.

As for Greene's contention that his trial attorney did not completely investigate the case, "'strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.'" Gray, 529 F.3d at 229 (quoting Strickland, 446 U.S. at 690–91). Furthermore, "[a]n attorney can avoid activities that appear distractive from more important duties. Counsel was entitled to formulate a strategy that was reasonable at the time and to balance limited resources in accord with effective trial tactics and strategies." Harrington v. Richter, 131 S. Ct. 770, 789 (2011). As for Greene's contention that his trial attorney should have called additional witnesses, the failure to call witnesses is a tactical decision which generally does not amount to ineffective assistance of counsel. See, e.g., Goodson v. United States, 564 F.2d 1071, 1072 (4th Cir. 1977).

Greene raised these identical claims of ineffective assistance in his state collateral proceedings. Mem. Supp. Mot. Summ. J., Ex. 3 at 20–21. Thus, the court must review the state proceedings in light of 28 U.S.C. § 2254(d). Harrington, 131 S. Ct. at 783–84; Williams, 529 U.S. at 405, 407; Bell, 236 F.3d at 158. Even when "a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no basis for the state court to deny relief." Harrington, 131 S. Ct. at 784. "When § 2254(d) applies [to a Strickland

8

claim], the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Id. at 788.

Greene's claim that his trial counsel should have consulted an independent ballistics expert lacks merit. "Here it would be well within the bounds of a reasonable judicial determination for the state court to conclude that defense counsel could follow a strategy that did not require the use of experts . . . ." Id. at 789. Greene's claim that his trial counsel should have interviewed and subpoenaed the occupants of the house from which he was seized likewise fails. The record indicates the occupants would have provided detrimental, rather than helpful testimony. See Tr. at 154–55. "An attorney need not pursue an investigation that would be fruitless, much less one that might be harmful to the defense." Harrington, 131 S. Ct. at 789–90.

At bottom, Greene contests whether his trial counsel sufficiently challenged D'Antonio's testimony. The record demonstrates, however, that Greene's trial attorney vigorously cross-examined D'Antonio. For example, D'Antonio admitted that he alone paid for the guns. Tr. at 371, 374, 407, 409. D'Antonio also admitted that he was released on an unsecured bond shortly after he implicated Greene and that his charges arising out of the incident were still pending. Id. at 375–83. D'Antonio admitted that he had previously "got into words" with one of the victims and that D'Antonio had attacked a close friend of the victim. Id. at 387–88. D'Antonio also admitted that he had previously been convicted of firing into an occupied dwelling. Id. at 402, 413–14. Moreover, Greene's trial attorney questioned both victims, who stated that they could not see who was in the car or who did the shooting, and that they did not have any disputes with Greene and that Greene had no reason to shoot them, but that D'Antonio had fought with one victim's "good friend." Id. at 56–60, 99–101. Greene's trial attorney also demonstrated that there was no forensic evidence, such

9

as fingerprints, DNA, gunshot residue, or fibers, linking Greene to the guns or car. Id. at 207–10, 213, 260–61.

Notwithstanding the professional and commendable work of Greene's trial counsel, the evidence against Greene was for the jury to assess. The assessment included analyzing D'Antonio's credibility. In addition, there was other evidence strongly linking Greene to the crimes. For example, a Greenville police officer was outside on the sidewalk in the neighborhood and heard the gunshots. Tr. at 103. "Immediately" after the shots were fired, the officer saw D'Antonio's car and gave pursuit in his patrol car. Id. at 103–04. The officer "stopped behind the vehicle in a similar fashion to a traffic stop" and observed "[a] white male exit[] the vehicle . . . . [f]rom the driver door" and "a black male exit[] the vehicle" from "the passenger door." Id. at 104–05. The officer was able to look at both men's faces, and later identify them as D'Antonio (who is white) and Greene (who is black). Id. at 105–06, 112. "There was no one else in the vehicle." Id. at 106.

Greene has not shown that his trial counsel's choices were anything other than trial strategy, nor has he demonstrated that his trial counsel's conduct fell below an objective standard of reasonableness. Moreover, Greene has not shown that there is a reasonable probability that, but for trial counsel's alleged unprofessional errors, the result of the proceeding would have been different. Most importantly, Greene has not met the "doubly" high bar of Strickland and 28 U.S.C. § 2254(d). Harrington, 131 S. Ct. at 784. Therefore, the court grants respondent's motion for summary judgment.

III.

In sum, the court GRANTS respondent's motion for summary judgment [D.E. 12] and DISMISSES Murphy's application for a writ of habeas corpus [D.E. 1]. The court also DENIES a certificate of appealability. See 28 U.S.C. § 2253(c). The Clerk of Court shall close this case.

10

SO ORDERED. This 9 day of March 2011.

JAMES C. DEVER III
United States District Judge